UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEVEN ALLEN MCCRACKEN, | Case No. 3:25-CV-05895-TMC |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | |
| ELI LILLY AND COMPANY, | |
| Defendant. | |

## I.    INTRODUCTION

In March 2000, while taking prescribed Zyprexa, self-represented Plaintiff Steven McCracken experienced symptoms of a stroke. In 2022, Mr. McCracken experienced residual symptoms of the stroke, which he describes as "flickers," and learned for the first time that he had endured permanent brain damage. He sued Defendant Eli Lilly and Company in October 2025, alleging that Eli Lilly was responsible for his injuries under the Washington Product Liability Act. Eli Lilly moved to dismiss, arguing that the allegations of the complaint demonstrate that Mr. McCracken's claims are barred by the statute of limitations. The Court concludes that under Washington law, Mr. McCracken experienced appreciable injuries of the

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 1

stroke in 2000, and with reasonable diligence he could have connected those injuries to his Zyprexa prescription. Because additional later harm does not reset or toll the statute of limitations, Mr. McCracken's claims are time-barred, and the Court GRANTS Eli Lilly's motion to dismiss with prejudice.

## II.    BACKGROUND

Mr. McCracken alleges that between approximately January 1999 and 2003 he was prescribed Zyprexa (olanzapine), an antipsychotic manufactured and marketed by Defendant Eli Lilly. Dkt. 14 ¶ 5. Mr. McCracken claims that on March 31, 2000, he suffered a stroke presenting as left-sided facial droop and left arm paresthesia/weakness, alongside metabolic side effects including extreme weight gain, excessive sleep, and reduced drive. *Id*. ¶¶ 6–7. At the time, a CT scan did not reveal damage and Mr. McCracken thought these were transient symptoms. *Id*. ¶ 7.

Mr. McCracken claims that on October 3, 2022, and October 30, 2022, he experienced recurring "flickers" affecting the same side of the body. *Id*. ¶ 8. He states that at this time OHSU neurology informed him that he had permanent brain damage attributable to the 2000 stroke. *Id*. Mr. McCracken states that he has since experienced additional flickers in May 2024 and May 2025. *Id*. ¶ 9. He states that expert medical opinion attributes the 2000 stroke to either recreational drug (methamphetamine) use or antipsychotic use. *Id*. ¶ 11. Mr. McCracken points to his documented sobriety while taking Zyprexa to assert Zyprexa is the likely cause of his original symptoms and ongoing flickers. *Id*.

Mr. McCracken states that after learning he had sustained permanent cerebrovascular damage in 2022, he "undertook investigation into its cause and the relationship between Zyprexa's metabolic effects and stroke risk." *Id*. ¶¶ 62–63. He cites a New York Times article from December 17, 2006, regarding Eli Lilly's internal company documents disclosed in

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 2

litigation showing that by 1999 executives were concerned about the drug's association with weight gain and high blood sugar. *Id.* ¶¶ 12–15.Mr. McCracken alleges that Eli Lilly suppressed documents regarding Zyprexa's metabolic harms to protect profitability while aggressively marketing the drug for long-term use. *Id.* ¶¶ 18–19.

Mr. McCracken filed this lawsuit on October 3, 2025. Dkt. 1. Eli Lilly moved to dismiss, and Mr. McCracken both opposed the motion and amended his complaint. Dkts. 12, 14, 15. Eli Lilly replied and argued that the amended complaint did not cure the deficiencies that require dismissal. Dkts. 18, 19. The Court therefore analyzes Eli Lilly's motion as directed at the amended complaint.

### III.    LEGAL STANDARD

A party's "motion to dismiss for failure to state a claim" is governed by Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), the Court may dismiss a complaint that fails to present an identifiable legal theory or provide sufficient facts to support a valid legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). A complaint does not need "detailed" facts to survive a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but it must contain facts that can plausibly support a claim "on its face" if the facts are accepted as true. *See Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "on its face" if the facts provided allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court accepts all factual allegations as true and draws all reasonable inferences in favor of the nonmoving party when evaluating a Rule 12(b)(6) motion. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Additionally, if a plaintiff is self-represented, the Court "'construe[s] the pleadings liberally' and 'afford[s] the

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 3

petitioner the benefit of any doubt.'" *Boquist*, 32 F.4th at 774 (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)). But the Court does not assume the truth of legal conclusions presented as facts (*see Twombly*, 550 U.S. at 555) and mere conclusory statements are not enough to support a claim. *Iqbal*, 556 U.S. at 678. "A liberal construction of a pro se complaint [...] does not mean that the court will supply essential elements of a claim that are absent from the complaint." *Boquist*, 32 F.4th at 774 (citing *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)).

### IV.    DISCUSSION

**A.    Plaintiff's claim is barred by the WPLA statute of limitations.**

"A statute-of-limitations defense, if apparent from the face of the complaint, may properly be raised in a motion to dismiss." *Seven Arts Filmed Ent. Ltd., v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation modified). A claim for relief under the Washington Product Liability Act (WPLA) has a three-year statute of limitations. *Hoefs v. Sig Sauer, Inc.*, No. 3:20-cv-05173-RAJ, 2022 WL 823496, at *2  (W.D. Wash. Mar. 18, 2022); *see* RCW 7.72.060(3) ("[N]o claim under this chapter may be brought more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause.").

The WPLA incorporates a discovery rule by which "the statute of limitations begins to run when a claimant first learns, or should have learned, of the essential elements of the possible cause of action." *Louisiana-Pacific Corp. v. ASARCO*, 24 F.3d 1565, 1580 (9th Cir. 1994). "The essential elements of a products liability claim under Washington law are duty, breach of duty, causation, and damage or injury." *Id.* While the "application of the discovery rule is generally a factual question," the Court may resolve the issue as a matter of law if "reasonable minds can reach but one conclusion." *Hipple v. McFadden*, 161 Wn. App. 550, 561, 255 P.3d 730 (2011).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 4

"In assessing the damage element, the statute of limitations begins to run when the claimant first discovers, or should have discovered, some damage, not necessarily the full extent of the damage[.]" *Louisiana-Pacific*, 24 F.3d at 1580. Once a plaintiff "is placed on notice by some appreciable harm occasioned by another's conduct," he "must make further diligent inquiry to ascertain the scope of the actual harm." *Green v. Am. Pharm. Co.*, 136 Wn.2d 87, 96, 960 P.2d 912 (1998). "The plaintiff is charged with what a reasonable inquiry would have discovered." *Id.* "The statute of limitations is not postponed by the fact that further, more serious harm may flow from the wrongful conduct," nor is it "postponed until the specific damages for which the plaintiff seeks recovery actually occur." *Id.* at 96–97.

Eli Lilly argues that Mr. McCracken knew or should have known that he had experienced harm from Zyprexa no later than 2003. Dkt. 12 at 9–10. Eli Lilly points to Mr. McCracken's allegations that he experienced extreme weight gain, excessive sleep, and reduced drive between January 1999 and 2003, along with the left-sided facial droop and left arm paresthesia/weakness on March 31, 2000. Dkt. 12 at 9–10. Because Mr. McCracken was under the care of a physician while prescribed Zyprexa, and the 1996 label for Zyprexa warned physicians about the potential for many of these side effects, Eli Lilly argues that with reasonable diligence Mr. McCracken could have discovered Zyprexa was a likely cause. *Id*. at 2–3, 10–11; *see* Dkt. 13-1 (FDA warning label).[1] Eli Lilly contends that under the Washington Supreme Court decision in *Green*, Mr. McCracken's initial injuries started the statute of limitations, and it was not tolled merely because "further, more serious harm" either occurred or was discovered later. *Id*. at 10 (quoting *Green v. A.P.C.*, 136 Wn.2d at 96).

---

[1] The Court may take judicial notice of the FDA-approved warning label without converting the motion to dismiss into one for summary judgment. *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977, 983–84 (D. Ariz. 2013).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 5

In his amended complaint, Mr. McCracken claims that he sought immediate medical attention when he experienced "left-sided facial droop and left arm paresthesia/weakness" on or about March 31, 2000. Dkt. 14 ¶¶ 57–58. But at that time, the brain imaging performed "was interpreted as unremarkable," and he "was not informed that he had suffered a stroke or permanent brain injury." *Id.* ¶¶ 58–59. He therefore "understood the event to be transient and non-permanent." *Id.* ¶ 59. Mr. McCracken further alleges that "[i]n light of the negative imaging, absence of a stroke diagnosis, and 1996 Zyprexa clinical trial and/or post marketing data naming 'facial paralysis' alongside a multitude of other temporary symptoms/side-effects without connecting it to stroke, [he] did not know and could not reasonably have known that he had sustained a permanent cerebrovascular infarct or brain damage in 2000." *Id*. ¶ 60.

Mr. McCracken alleges that it was only in 2022 when later MRI imaging revealed evidence "consistent with prior stroke-related brain injury" that he learned he had "permanent cerebrovascular damage" and undertook investigation about its cause. *Id*. ¶¶ 62–63. Mr. McCracken alleges that his claim "did not accrue until he knew or reasonably should have known of the permanent injury and its causal connection to Zyprexa, which occurred no earlier than October 3rd, 2022." *Id*. ¶ 66. In his opposition to the motion to dismiss, Mr. McCracken argues that "[t]his case . . . involves later discovery of the injury itself—not later worsening of a known injury." Dkt. 15 at 10.

In addition to the Ninth Circuit's decision in *Louisiana-Pacific* and the Washington Supreme Court's decision in *Green*, two Washington Court of Appeals decisions are instructive in analyzing Eli Lilly's statute of limitations argument. First, the facts of *Steele v. Organon, Inc.* are helpful in distinguishing between a new, distinct injury and an injury where the extent of the harm increases over time. 43 Wn. App. 230, 233, 716 P.2d 920 (1986). In April 1975, the plaintiff Mrs. Steele required hospitalization when she overdosed on her prescription medication,

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 6

Wigraine, after neither her doctor nor the pharmacy warned her to limit intake of the medication. *Id.* Steele did not file her lawsuit until 1982, and she argued that the damage element of her cause of action was missing until 1981, when she suffered a heart attack related to the overdose. *Id.* The Court of Appeals disagreed, holding that because Steele was "aware of some injury" and had "suffered actual and appreciable damages" from the overdose in 1975, including "loss of sensation in her arms and legs," she knew all the elements of her cause of action at that time.

Similarly, in *Zaleck v. Everett Clinic*, the plaintiff developed numbness and tingling in 1981 when he received a painful injection to his thumb and was told that same day the doctor might have hit a nerve. 60 Wn. App. 107, 109, 802 P.2d 826 (1991). He filed a lawsuit in 1986, after multiple surgeries failed to fully correct the problem and Zaleck realized he would have a permanent partial impairment. *See id.* at 109–10. The court of appeals found that his claim was barred by the statute of limitations. The court explained that from the initial reaction and known likely cause, a "reasonable person could only have concluded that the injection caused at least some of Zaleck's symptoms." *Id.* at 111. The court held that "[a]lthough he may not have known at that time that he would ultimately suffer a permanent partial disability, he knew at the time of the injection that some damage had occurred," and he could have discovered the cause by simply asking his doctors. *Id.* at 112 (citing *Steele*, 43 Wn. App. at 235).

Even taken in the light most favorable to Mr. McCracken, the facts alleged in his complaint are not materially distinguishable from *Steele* or *Zaleck.* It is clear from the face of the complaint that Mr. McCracken suffered actual and appreciable harm—including his metabolic symptoms, but more importantly the facial droop and left arm weakness that were symptoms of his stroke—between 1999 and 2003. It is also clear from Mr. McCracken's own reference to the "1996 Zyprexa clinical trial and/or post marketing data naming 'facial paralysis' alongside a multitude of other temporary symptoms/side-effects without connecting it to a stroke," Dkt. 14

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 7

¶ 60, along with the FDA warning label provided by Eli Lilly, that with reasonable diligence Mr. McCracken could have discovered that Zyprexa was a possible cause of those symptoms. Under binding the Washington and Ninth Circuit case law discussed above, the statute of limitations is not tolled or reset because Mr. McCracken did not discover the full extent of his injury until 2022. Because this defect cannot be cured by amending the complaint, Mr. McCracken's claims must be dismissed with prejudice.[2] *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (under futility analysis, "dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment") (citation modified).

## V.   CONCLUSION

For reasons explained above, the Court GRANTS Defendant Eli Lilly's motion to dismiss (Dkt. 12). The case is DISMISSED WITH PREJUDICE.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 22nd day of June, 2026.

Tiffany M. Cartwright
United States District Judge

---

[2] Because the statute of limitations issue is dispositive, the Court does not address Eli Lilly's additional argument that the claims are barred by the learned intermediary doctrine. Nor does the Court address Eli Lilly's argument that equitable tolling does not save McCracken's claims, since McCracken has neither alleged nor argued that his claims are subject to equitable tolling.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 8